UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| **SAMUEL KAUFMAN,** | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 1:21-cv-06641 |
| vs. | ) | |
| | ) | |
| **NEWREZ LLC,** f/k/a New Penn Financial, | ) | **JURY TRIAL DEMANDED** |
| d/b/a Shellpoint Mortgage Servicing, | ) | |
| | ) | |
| Defendant. | ) | |

## COMPLAINT

Plaintiff, Samuel Kaufman, through counsel, for his complaint against Defendant, NewRez LLC, f/k/a New Penn Financial, d/b/a Shellpoint Mortgage Servicing ("Shellpoint"), states:

### NATURE OF THE CASE

1. Plaintiff brings this action to secure redress for unlawful debt collection practices engaged in by Defendant. Plaintiff contends that Defendant violated the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* ("FDCPA"), by communicating directly with him in an attempt to collect a debt and in that communication making multiple false statements to Plaintiff and engaging in conduct violating the FDCPA.

2. The FDCPA broadly prohibits unfair or unconscionable collection methods, conduct which harasses or abuses any debtor, and the use of any false or deceptive statements in connection with attempts to collect a debt. 15 U.S.C. §§1692d, 1692e, 1692f and 1692g.

3. The FDCPA also prohibits communication directly with the consumer when the debt collector has knowledge that the consumer is represented by an attorney. 15 U.S.C. §§1692b(6), 1692c(a)(2).

1

4. In enacting the FDCPA, Congress found that: "[t]here is abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors. Abusive debt collection practices contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy." 15 U.S.C. §1692(a).

5. Because of this, courts have held that "the FDCPA's legislative intent emphasizes the need to construe the statute broadly, so that we may protect consumers against debt collectors' harassing conduct" and that "[t]his intent cannot be underestimated." *Ramirez v. Apex Financial Management LLC*, 567 F.Supp.2d 1035, 1042 (N.D.Ill. 2008).

6. Among other things, the FDCPA prohibits debt collectors from: (a) communicating directly with consumers who are represented by counsel (15 U.S.C. §§1692b(6), 1692c(a)(2)), (b) falsely representing the character, amount or legal status of any debt (15 U.S.C. §1692e(2)(A)) and (c) disclosing consumer debt information to third parties without the consumer's consent. 15 U.S.C. §1692c(b).

7. The FDCPA encourages consumers, through counsel, to act as "private attorneys general" to enforce the public policies and protect the civil rights expressed therein. *Crabill v. TransUnion, LLC*, 259 F.3d 662, 666 (7th Cir. 2001).

8. Plaintiff asserts claims against Shellpoint for multiple violations of the FDCPA.

**JURISDICTION AND VENUE**.

9. Jurisdiction is conferred by 28 U.S.C. §1331 as this action arises under the Fair Debt Collection Practices Act, 15 U.S.C. §1692 *et seq.* ("FDCPA").

10. Venue and personal jurisdiction in this District are proper under 28 U.S.C. §1391(b)(2) because Shellpoint conducts business in this District and because the collection communications and practices giving rise to the claims occurred within this District.

**PARTIES**

11. Plaintiff is an individual over the age of eighteen, resident of the State of Illinois, who has resided at the Home at all relevant times as his primary and principal residence.

12. Plaintiff is a consumer within the meaning of the FDCPA as he is alleged to owe a debt incurred for personal, family, or household purposes.

13. Shellpoint is a national mortgage loan servicer which does business in Illinois and in this District.

14. Shellpoint uses postal mail, an instrumentality of interstate commerce, within Illinois and across state lines throughout the United States, for its business, the principal purpose of which is the collection of debts, and/or each regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another.

15. Shellpoint became the servicer of the Loan when it was alleged to be in default.

16. The FDCPA does not just apply to third-party debt collection firms; the statute's broad definition of "debt collector" encompasses servicers of consumer and mortgage loans that do not acquire ownership of the underlying debt but acquire servicing rights after the loan is in default. See 15 U.S.C. §1692a(6)(F); *Johnson v. Carrington Mortgage Servs.*, 638 F. App'x 523, 524–25 (7th Cir. 2016) (stating that where a servicer begins servicing the mortgage loan after a default, it is a "debt collector" under the FDCPA and dismissing plaintiff's FDCPA claim because servicer began servicing the loan while the mortgage loan was current); *Schlosser v. Fairbanks Capital Corp.*, 323 F.3d 534, 536–37 (7th Cir. 2003) (holding that servicer was a "debt collector" where the debt was not actually in default, but the servicer acquired it as a debt in default and its collection activities were based on that understanding).

17. Shellpoint is a debt collector within the meaning of 15 U.S.C. §1692a(6).

**FACTUAL ALLEGATIONS**

18. Plaintiff, Samuel Kaufman ("Plaintiff"), owns the home located at and commonly known as 748 Creek Bend Lane, Antioch, Illinois 60002 (the "Home").

19. In order to obtain money for personal, family and household purposes, on August 26, 2005, Plaintiff borrowed money and executed a note payable to Decision One Mortgage Company, LLC in the amount of $150,000.00. To secure payment of that note, Plaintiff granted a mortgage lien on his Home (the "Mortgage"). The note and mortgage are collectively referred to herein as the "Loan." A copy of the Loan is attached as ***Exhibit 1***.

20. The Loan is presently owned by U.S. Bank Trust National Association, as trustee for CVI LCF Mortgage Loan Trust I ("U.S. Bank").

21. Shellpoint acquired servicing of the Loan on July 2, 2019.

22. Shellpoint became the servicer of the Loan when it was alleged to be in default.

23. Plaintiff occupies the Home as his primary, personal residence.

24. In 2017, Plaintiff encountered financial difficulties and could no longer pay the Loan.

25. On May 16, 2017, U.S. Bank filed its Complaint to Foreclose Mortgage against Plaintiff in the Circuit Court of the Nineteenth Judicial Circuit, Waukegan, Lake County, Illinois, said case being docketed as Case Number 2017-CH-00706 ("Foreclosure Case").

26. In the Foreclosure Case, U.S. Bank sought the full accelerated balance due under the Loan.

27. In the Foreclosure Case, a judgment of foreclosure and sale was entered by the court on February 14, 2020 for the full accelerated balance due.

28. On June 4, 2020, U.S. Bank and Shellpoint filed a motion to amend the judgment of foreclosure.

29. In support of the Motion to Amend Judgment, an Affidavit of Amounts Due and Owing was executed by Nicole Whitman, "foreclosure specialist," for Shellpoint ("Affidavit"), was filed.

30. In the Affidavit, Shellpoint claimed that Plaintiff was liable for fees, charges and corporate advances for amounts that he did not owe.

31. Specifically, the Transaction Detail attached to the Affidavit indicated that Plaintiff was charged for "BK Costs." Plaintiff has never filed a bankruptcy case. No other named defendant in the Foreclosure Case had filed a bankruptcy case.

32. The Transaction Detail revealed that Shellpoint paid itself $1,794.93 on September 19, 2019.

33. Shellpoint had no basis pursuant to the terms of the Loan to claim payment for any amounts incurred for a bankruptcy case that had not been filed and its statement that such amounts were due was false. Shellpoint had no basis pursuant to the terms of the Loan to pay itself $1,794.93 for amounts that were not incurred in a bankruptcy case.

34. On October 18, 2019, Shellpoint sent Plaintiff its Mortgage Statement indicating that it had charged $1,794.93 for "BK Costs" on September 19, 2019 and that those amounts were paid on that same date.

35. On July 8, 2020, attorney Arthur C. Czaja entered his appearance on behalf of the Plaintiff in the Foreclosure Case and has been representing the Plaintiff in that case at all times since.

36. On July 20, 2020, Plaintiff filed a lawsuit in the United States District Court for the Northern District of Illinois, Eastern Division, captioned *Samuel Kaufman v. NewRez LLC, f/k/a New Penn Financial, d/b/a Shellpoint Mortgage Servicing, et al.* (Case Number 20-cv-04256), ("2020 Lawsuit") asserting various claims against Shellpoint regarding its servicing of the Loan, including claims for violations of the FDCPA and ICFA.

37. The undersigned attorneys, Rusty Payton and Arthur Czaja, represented the Plaintiff in the 2020 Lawsuit.

38. On October 9, 2020, the 2020 Lawsuit was dismissed without prejudice pursuant to the terms of the Confidential Settlement and Release Agreement entered into by and between the parties on or about November 12, 2020 ("2020 Settlement").

39. On March 9, 2021, the Sheriff of Lake County conducted a sale of the Plaintiff's Home.

40. At that sale, the lender and judgment creditor submitted a credit bid in the amount of $327,282.10. That bid was the highest and winning bid at the judicial sale.

41. Included in this credit bid were advances for "taxes" for the Home in the amount of $8,212.54 that were allegedly incurred by Shellpoint since July 9, 2020, the "good through" date of the amended judgment of foreclosure.

42. In reality, only $4,106.27 in property taxes for the Home were paid by Shellpoint since July 9, 2020, as evidenced by the records of the Lake County Treasurer's office showing the property tax payment history for the Home.

43. On March 15, 2021, Shellpoint filed a motion to confirm the March 9, 2021 Sheriff's sale of the Home ("Motion to Confirm Sale").

44. In the Motion to Confirm Sale, Shellpoint requested that the Court approve $8,212.54 in advances for real estate taxes since the July 9, 2020 "good through" date of the amended judgment of foreclosure. But, in fact, only half that amount, or $4,106.27, had been paid since July 9, 2020.

45. Nevertheless, a judicial sale of the Home occurred where the winning bid was a credit bid which included $4,106.27 in post-July 9, 2020 property tax payments for the Home that had never been paid.

46. Shellpoint had no basis pursuant to the terms of the Loan or any judgment in the Foreclosure Case to claim payment for property tax payments that were never made. Shellpoint's statement that such amounts were due was false.

47. Moreover, in the Motion to Confirm Sale, Shellpoint sought to collect $8,184.86 in interest from the Plaintiff from July 9, 2020 (the "good through" date of the amended judgment of foreclosure) to March 9, 2021 (the date of the judicial sale). However, this figure amounts to more than $31.30 per diem interest that accrued under the loan for this time period.

48. Shellpoint had no basis pursuant to the terms of the Loan or any judgment in the Foreclosure Case to claim interest from July 9, 2020 in excess of $31.30 per day.

49. Shellpoint's attempt to collect money from the Plaintiff in the form of property taxes were not paid and interest that was not due through a credit bid at a judicial foreclosure sale was deceptive means to collect a debt.

50. On March 17, 2021, Plaintiff filed a second lawsuit in the United States District Court for the Northern District of Illinois, Eastern Division, captioned *Samuel Kaufman v. NewRez LLC, f/k/a New Penn Financial, d/b/a Shellpoint Mortgage Servicing, et al.* (Case

Number 21-cv-01466), ("2021 Lawsuit") asserting various claims against Shellpoint regarding its servicing of the Loan, including claims for violations of the FDCPA and ICFA.

51. The undersigned attorneys, Rusty Payton and Arthur Czaja, represented the Plaintiff in the 2020 Lawsuit.

52. On August 11, 2021, the parties to the 2021 Lawsuit filed a Joint Stipulation of Dismissal, advising the Court that the parties had reached a settlement in principle of all claims in the action.

53. On September 28, 2021, the 2021 Lawsuit was dismissed with prejudice pursuant to the terms of the Confidential Settlement and Release Agreement entered into by and between the parties on or about August 17, 2021 ("2021 Settlement").

54. On October 27, 2021, after being twice previously sued by the Plaintiff and despite the fact that the Plaintiff was represented by counsel, Shellpoint sent a formal notice directly to the Plaintiff stating that he was in default under the terms of the Loan for failure to pay amounts due ("First Notice"), a copy of which is attached as ***Exhibit 2***.

55. Shellpoint's First Notice stated that Plaintiff had a right to cure the default if he paid the full amount of the default by December 1, 2021.

56. The First Notice further advised the Plaintiff that his failure to cure the default on or before December 1, 2021 may result in acceleration of the sums secured by the Mortgage, foreclosure, and sale of the Home.

57. As of the date of Shellpoint's First Notice, the total amount required to cure the default was $130,550.34, consisting of the following amounts, plus any additional monthly late payments, late charges and other charges due under the Loan after the date of the First Notice:

- Total monthly payments due for
  02/01/2017 thru 10/01/2021          $121,536.33
- Late Charges                                  213.57
- Corporate Advance Balance           8,800.44
- Unapplied Balance                           0.00
- TOTAL TO CURE DEFAULT            $130,550.34

58. Shellpoint's First Notice falsely represents the status of the debt as being not accelerated when, in fact, the Loan was accelerated and has been in foreclosure since May 16, 2017.

59. The First Notice is an attempt to collect from the Plaintiff a debt not owed by Plaintiff.

60. On November 12, 2021, Shellpoint sent another formal notice directly to the Plaintiff stating that he was behind on his mortgage payments and the total amount due as of that date was $132,611.45 ("Second Notice"), a copy of which is attached as ***Exhibit 3***.

61. On November 17, 2021, Shellpoint sent a second and final notice directly to the Plaintiff that his hazard insurance had expired and that Shellpoint planned to buy insurance for the property, costing an estimated $1,789.56 annually. Shellpoint further stated that the Plaintiff must pay Shellpoint for any period during which the lender-placed insurance was in effect ("Insurance Notice"), a copy of which is attached as ***Exhibit 4***.

## COUNT I

### [VIOLATION OF THE FDCPA]

62. Plaintiff repeats and realleges all of the above allegations as though fully set forth herein.

63. Shellpoint is a "debt collector" within the meaning of the FDCPA.

64. 15 U.S.C. §§1692b(6) and 1692c(a)(2) prohibit direct communication with a consumer after the debt collector knows the consumer is represented by an attorney.

65. Here, the Plaintiff was represented by counsel at all relevant times, both in the Foreclosure Case and in the two prior lawsuits Plaintiff filed against Shellpoint.

66. The Plaintiff's attorney's name and address were readily ascertainable and, in fact, known to Shellpoint.

67. The Plaintiff's attorney did not fail to respond to any communications from Shellpoint.

68. The Plaintiff's attorney did not consent to Shellpoint contacting the Plaintiff directly.

69. Shellpoint's direct communications caused harm and otherwise intruded upon the attorney-client relationship between Plaintiff and his counsel. Protection of that relationship is among the animating purposes of the FDCPA and interference with that relationship results in harm of a type recognized by Illinois law. Shellpoint's actions deprived Plaintiff of the benefit of his attorney's counsel, a benefit that he paid for.

70. Despite this, Shellpoint sent the First Notice (*Exhibit 2*) and Second Notice (*Exhibit 3*) directly to the Plaintiff. Shellpoint sent the Insurance Notice (*Exhibit 4*) directly to the Plaintiff, seeking to collect amounts due for lender-placed insurance.

71. Shellpoint violated 15 U.S.C. §§1692b(6) and 1692c(a)(2) when it communicated directly with the Plaintiff, a represented party, in an attempt to collect a debt.

72. 15 U.S.C. §1692e provides in relevant part:

> A debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt. Without limiting the general application of the foregoing, the following conduct is a violation of this section:
>
> (2) The false representation of–
>
> (A) the character, amount, or legal status of any debt; . . .

> (10) The use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer. . . .

73. 15 U.S.C. §1692f provides in relevant part: "A debt collector may not use unfair or unconscionable means to collect or attempt to collect any debt. . . ."

74. Shellpoint violated **§§1692e and 1692f** of the FDCPA by issuing the Notice, which falsely represented the amounts Plaintiff owed.

75. Shellpoint violated **§§1692e and 1692f** of the FDCPA by falsely representing the status of the debt as being not accelerated when, in fact, the Loan was accelerated and in foreclosure.

76. Pursuant to 15 U.S.C. §1692k, Plaintiff is entitled to actual damages, statutory damages, attorneys' fees and costs.

77. Pursuant to **§1692k** of the FDCPA, Plaintiff is entitled to recover from Shellpoint actual damages, statutory damages up to $1,000, the costs of this action, together with reasonable attorney fees as determined by the Court.

**WHEREFORE,** the Plaintiff prays for the entry of judgment in his favor and against Shellpoint, as follows:

a. For Statutory damages of up to $1,000.00 for violation of the FDCPA;

b. For actual damages, all costs and reasonable attorney fees; and

c. For all other relief this Court may deem just and proper.

## JURY DEMAND

Plaintiff, Samuel Kaufman, hereby respectfully demands a trial by jury on all claims.

*Respectfully submitted,*

**SAMUEL KAUFMAN**

*/s/ Rusty A. Payton*
Rusty A. Payton
PAYTON LEGAL GROUP
20 North Clark Street
Suite 3300
Chicago, Illinois 60602
(773) 682-5210
info@payton.legal

Arthur C. Czaja
LAW OFFICE OF ARTHUR CZAJA
7521 N. Milwaukee Ave.
Niles, Illinois 60714
(847) 647-2106
arthur@czajalawoffices.com

*Counsel for Plaintiff*